J-S85030-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: S.S.S., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: Y.O., NATURAL | : | |
| MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1392 WDA 2017 |

Appeal from the Order July 31, 2017
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-0000035-2017

BEFORE:  BOWES, J., PANELLA, J., and STABILE, J.

MEMORANDUM BY PANELLA, J.                    **FILED MARCH 06, 2018**

Y.O. ("Mother") appeals from the order entered on July 31, 2017, terminating her parental rights to S.S.S., ("Child"), her male, dependent child born in January 2015, with an unknown father, pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b) of the Adoption Act, 23 Pa.C.S.A. §§ 2101-2938 the Adoption Act.[1] We affirm.

Based on the testimony at the termination hearing, the trial court set forth the factual background and procedural history of this appeal as follows.

> The minor is residing at Wesley Spectrum, a foster care provider. He was born to [Mother] and an unknown father.

---

[1] In the same order, the trial court involuntarily terminated the parental rights of "G. Unknown," and any unknown father of Child. Neither "G. Unknown" nor any unknown father has filed an appeal from the termination order, nor is "G. Unknown" or any unknown father a party to the appeal presently before this Court.

[Mother], 20 years old, has demonstrated[,] for years and on numerous occasions, that she is not able to control her violent outbursts. CYF became involved with [Mother][] as a result of a 2015 referral, when she was in her teenage years. She has a diagnosis of bi-polar disorder and was ordered treatment, to which she had not been compliant. According to Ms. Shaheeda Wilks, a caseworker who testified at the hearing, CYF received reports that on July 14, 2015, [Mother] threatened to kill [Child] via text message. This was never objected to by her counsel; therefore, the [c]ourt afforded weight to this statement and found that this statement, standing on its own, is enough to cause great alarm for the minor's well-being and it is clearly not in the minor's best interest to remain in that type of environment. However, this does not end the [c]ourt's inquiry. Ms. Wilks continued to testify that on July 29, 2015, during a dependency hearing, … [M]other had to be removed from the courthouse and could not attend the hearing because she had a physical altercation with another female while inside the courthouse. Following the dependency hearing, the child was found dependent under Section 1. [42 Pa.C.S.A. § 6302(1), definition of "Dependent child".] A family service plan (hereinafter referred to as (FSP) was put into place to address the mother's mental health and anger issues, whereby she was ordered to participate with the caseworkers and other professionals. [Mother] did attend two meetings; however, during one meeting specifically, March 9, 2017, [Mother] became verbally aggressive and abusive to the caseworkers and at one point had to be removed from the office by security. The violent outburst caused by [Mother] prevented her from being able to participate in subsequent sessions. Additionally, [Mother] has been inconsistent with her mental health treatment, which was a goal of the FSP.

Trial Court Opinion, 10/12/17, at 2-3 (unpaginated).

On March 6, 2017, CYF filed the petition seeking the involuntary termination of Mother's parental rights to Child. On July 21, 2017, the trial

court held an evidentiary hearing on the petition.[2] At the hearing, CYF presented the testimony of Shaheeda Wilks, the CYF caseworker assigned to the case. CYF then presented the testimony of Amy Rendos, the supervisor for coach visitation at Project Star. Finally, CYF presented the testimony of Maria Luczkow, a psychotherapist at Milestones Center who had treated Mother.[3] On July 31, 2017, the trial court entered the order involuntarily terminating Mother's parental rights.

Mother timely filed a notice of appeal, along with a concise statement pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In her brief on appeal, Mother raises the following issues:

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. §2511(a)(1), (2), (5), and (8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and

---

[2] The trial court previously changed Child's permanency goal to adoption under the Juvenile Act, 42 Pa.C.S.A. § 6351.

[3] Mother, who was represented by counsel at the hearing did not testify, and, in fact, left the hearing prior to its conclusion. **See** N.T., Termination Hearing, 7/21/17, at 104-105, 127-128, 148. Child was represented by Attorney Lynne P. Sherry, who stated, upon questioning by the trial court, that she was representing Child both as to his legal interests and best interests, as set forth in **In re Adoption of L.B.M.**, 161 A.3d 172 (Pa. 2017). There, a plurality decision, a majority of the Court concluded that counsel may serve both as the guardian *ad litem*, representing the child's best interests, and as the child's counsel, representing the child's legal interests, as long as there is no conflict between the child's legal and best interests. Here, the trial court concluded that there was no such conflict by Attorney Sherry's dual representation of Child. **See** N.T., Termination Hearing, 7/21/17, at 11.

convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of the child pursuant to 23 Pa.C.S. §2511(b)?

Mother's Brief, at 6.

In reviewing an appeal from an order terminating parental rights, we adhere to the following standard:

[A]ppellate courts must apply an abuse of discretion standard when considering a trial court's determination of a petition for termination of parental rights. As in dependency cases, our standard of review requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. As has been often stated, an abuse of discretion does not result merely because the reviewing court might have reached a different conclusion. Instead, a decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.

[T]here are clear reasons for applying an abuse of discretion standard of review in these cases. We observed that, unlike trial courts, appellate courts are not equipped to make the fact-specific determinations on a cold record, where the trial judges are observing the parties during the relevant hearing and often presiding over numerous other hearings regarding the child and parents. Therefore, even where the facts could support an opposite result, as is often the case in dependency and termination cases, an appellate court must resist the urge to second guess the trial court and impose its own credibility determinations and judgment; instead we must defer to the trial judges so long as the factual findings are supported by the record and the court's legal conclusions are not the result of an error of law or an abuse of discretion.

*In re Adoption of S.P.*, 47 A.3d 817, 826-827 (Pa. 2012) (internal citations omitted).

The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. **See In re R.N.J.**, 985 A.2d 273, 276 (Pa. Super. 2009).

Moreover, we have explained that

> [t]he standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

**Id**. (quoting **In re J.L.C.**, 837 A.2d 1247, 1251 (Pa. Super. 2003)).

This Court may affirm the trial court's decision regarding the termination of parental rights with regard to any *one* subsection of § 2511(a). **See In re B.L.W.**, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

Section 2511 provides, in relevant part, as follows:

**§ 2511. Grounds for involuntary termination**

**(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

* * *

> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

* * *

To satisfy the requirements of subsection (a)(2), the moving party must produce clear and convincing evidence regarding the following elements:

> (1) repeated and continued incapacity, abuse, neglect or refusal;
> (2) such incapacity, abuse, neglect or refusal has caused the child
> to be without essential parental care, control or subsistence
> necessary for his physical or mental well-being; and (3) the
> causes of the incapacity, abuse, neglect or refusal cannot or will
> not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted). The grounds for termination of parental rights under subsection (a)(2) are not limited to affirmative misconduct, but may include acts of refusal and also the incapacity to perform parental duties. *See In re A.L.D.* 797 A.2d 326, 337 (Pa. Super. 2002).

Mother challenges the sufficiency of the evidence to support termination with regard this subsection. She claims the evidence at the hearing demonstrated she was working towards satisfying her FSP objectives, and did not act with a settled purpose of relinquishing her parental rights or refuse to perform her parental duties. And she offers a litany of reasons in support of her position.

Mother maintains she complied with Lifeworks, and participated in a parenting program until her discharge. Additionally, Mother points out she attended mental health evaluations, engaged in treatment, and even took prescribed medication. Mother further states that, although she lacked her own housing, she resided with relatives. Mother also asserts she visited Child. Mother complains that CYF argues that she was not fully compliant with any of her goals, based on her inconsistent participation, discharge from programs, or refusal to participate. Mother argues that, although CYF

presented testimonial evidence that she argued, yelled, and threatened individuals, the testimony demonstrated that Child was not exposed to this behavior since April 2017, when Ms. Wilks took over the case. Mother further claims that there was no testimony that she caused any physical harm to Child.

Mother concedes that, in the past, she has acknowledged her frustration and anger control issues, but denies these issues prevent her from being able to parent Child. According to Mother, CYF is basing its conclusion on her interaction with the adults assigned to the case. Mother argues CYF is presuming she cannot parent Child because of her frustration and anger control issues, and that there is insufficient clear and convincing evidence to prove that she is incapable of parenting Child. Mother claims she engaged in appropriate and loving interactions with Child.

Mother also contends she remedied any parental incapacity, and that any allegation that she is not ready to parent Child is speculative or unclear. Mother does not dispute she failed to complete some programs and did not have a 100% attendance rate. She argues, however, that her actual level of participation or compliance with mental health therapy, medication, parenting instruction, and visitation was sufficient to remedy any parental incapacity directly related to Child.

With regard to subsection (a)(2), the trial court found the following from the testimony at the termination hearing:

It was the opinion of Ms. Wilks that [Mother's] unaddressed mental health and anger issues *have and will* affect her ability to safely parent the minor.

The testimony of Ms. Wilks also demonstrated that [Mother] failed the parenting goal the agency determined was necessary.

On May 31, 2016, [Mother] was to attend and complete the Arsenal Program to specifically address her emotional outbursts and anger issues. Her case file was closed out because she failed to attend her orientation on two separate occasions. [Mother] was given another chance to attend Arsenal; however, she was discharged and her case file was closed out a second time because she threatened to kill the staff members and made other inappropriate remarks to other clients. It should be noted that despite all of this, [Mother] was given a third chance to complete the parenting goal as a referral to the Family Resource Program was made by the agency. [Mother] never called to enroll in the program. In addition, Ms. Maria Luczkow, from Milestones Center, which is an outpatient psychotherapy clinic, testified [Mother] was to have 37 sessions of therapy to address her emotional and mental health well-being. She only attended 16 of the 37. It is important to note that when confronted by Ms. Luczkow, as to her inconsistent participation in the therapy, [Mother] threatened to kill her if she showed up for court. Needless to say, the service was terminated.

[Mother] failed the housing goal set out by the FSP. The agency made three referrals to the Urban League to address housing for [Mother] but she failed to participate and fully comply; therefore, failing the goal of obtaining and maintaining independent housing.

[Mother] failed the agency FSP visitation goal. Specifically, [Mother] was given numerous opportunities to have supervised visits. She had been inconsistent with the visits, only attending 27 of 68 visits in the time period of September 2015 through November 2016; had to have some of those visits she attended cut short due to her irrational emotionally [sic] outbursts, which caused a safety concern for the minor, the service providers, and CYF caseworkers; and due to her violent outbursts, two case workers had to be assigned due to safety concerns.[2]

- 8 -

² The [trial court] specifically notes that, in addition to [Mother's] violent and irrational behaviors exhibited in the context of this case, as the record is replete with her violent outbursts, she faced criminal prosecution in the 5th Judicial District-Crim. Div. for simple assault and terroristic threats as her own mother was the victim. She punched her mother in the face and was placed on adult probation, as this case was in pendency, and was ordered by The Hon. Joseph K. Williams, III, to complete anger management and a mental health evaluation. (See CP- 02-CR-0015862-2015)[.]

Trial Court Opinion, 10/12/17, at 2-4 (unpaginated).

After a careful review of the record, we find the trial court appropriately found Mother had (1) a repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

Mother attempts to minimize her frustration and anger management issues, claiming that she has addressed them. Her anger and threats, she explains, only involved adults and concerned the removal of Child from her. And she asserts any future impact on her ability to parent Child is speculative. We disagree.

We find no merit to Mother's argument that she is ready to, and capable of, parenting Child. Far from it. There is competent, clear and convincing evidence in the record that supports the trial court's determinations with regard to subsection (a)(2), and its termination of Mother's parental rights to

- 9 -

Child under that section. Thus, we find no abuse of discretion in the termination of Mother's parental rights pursuant to subsection (a)(2).

Next, we address Mother's second issue, *i.e.*, that the trial court abused its discretion in terminating her parental rights to Child pursuant to § 2511(b). That subsection provides as follows:

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

The focus in terminating parental rights under § 2511(a) is on the parent, but it is on the child pursuant to § 2511(b). *See In re Adoption of C.L.G.*, 956 A.2d 999, 1008 (Pa. Super. 2008) (*en banc*). In reviewing the evidence in support of termination under section 2511(b), our Supreme Court has stated as follows.

> [I]f the grounds for termination under subsection (a) are met, a court "shall give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S. § 2511(b). The emotional needs and welfare of the child have been properly interpreted to include [i]ntangibles such as love, comfort, security, and stability. … [T]he determination of the child's "needs and welfare" requires consideration of the emotional bonds between the parent and child. The "utmost attention" should be paid to discerning the effect on the child of permanently severing the parental bond.

- 10 -

*In re: T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (most citations and internal quotation marks omitted; brackets added and in original).

Subsection (b) does not mandate a formal bonding evaluation. **See In re Z.P.**, 994 A.2d 1108, 1121 (Pa. Super. 2010). And when evaluating a parental bond, "the court is not required to use expert testimony. Social workers and caseworkers can offer evaluations as well." **Id**. (citations omitted). Although it is often wise to have a bonding evaluation and make it part of the certified record, "[t]here are some instances … where direct observation of the interaction between the parent and the child is not necessary and may even be detrimental to the child." **In re K.Z.S.**, 946 A.2d 753, 762 (Pa. Super. 2008) (citation omitted). "The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." **Id**. (citation omitted).

A parent's abuse and neglect are likewise a relevant part of this analysis:

[C]oncluding a child has a beneficial bond with a parent simply because the child harbors affection for the parent is not only dangerous, it is logically unsound. If a child's feelings were the dispositive factor in the bonding analysis, the analysis would be reduced to an exercise in semantics as it is the rare child who, after being subject to neglect and abuse, is able to sift through the emotional wreckage and completely disavow a parent … Nor are we of the opinion that the biological connection between [the parent] and the children is sufficient in of itself, or when considered in connection with a child's feeling toward a parent, to establish a *de facto* beneficial bond exists. The psychological aspect of parenthood is more important in terms of the development of the child and [his] mental and emotional health than the coincidence of biological or natural parenthood.

*In re K.K.R.-S.*, 958 A.2d 529, 535 (Pa. Super. 2008) (internal citations and quotation marks omitted). Thus, the court may emphasize the safety needs of the child. *See*, *e.g.*, *In re K.Z.S.*, 946 A.2d at 763. "[A] parent's basic constitutional right to the custody and rearing of … her child is converted, upon the failure to fulfill … her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." *In re B., N.M.*, 856 A.2d 847, 856 (Pa. Super. 2004) (citation omitted).

With regard to subsection (b), the trial court stated the following:

> The minor has been placed in his pre-adoptive home since August 20, 2016. Furthermore, he has not been in [Mother's] care since July 29, 2015[,] and most importantly, for the life of this case, *i.e.* from the time the child was found dependent until the present, the minor and [Mother] have never re-unified. Lastly, 12 months have elapsed from the date of the minor's placement and/or removal from the unknown father.

> The [trial court] also heard testimony from the caseworker regarding observations of the minor's interaction with the foster family. It was testified by Ms. Wilks that she personally observed interactions between the minor and the foster family and observed him to be "happy" in that regard and his needs were being met. It was the opinion of the caseworker that termination and adoption were in the minor's best interest. It is also the same opinion shared by [the trial court].

> The evidence discussed above amply supported the [trial court's] conclusion that the child's bond with the mother "no longer helps but rather hinder[s] this child".[3] Therefore, the [trial court] properly concluded that the potential damage that may result from prolonging this relationship substantially outweighs the pain that may be caused by severing any remaining bond.

_____

[3] *In re P.A.B.*, 570 A.2d 522, 526 (Pa. Super. 1990).

Trial Court Opinion, 10/12/17, at 4-5 (unpaginated).

Mother maintains the trial court failed to properly consider her undisputed love for Child, and the effect of Child severing his relationship with Mother and all of his maternal relatives, including his infant, male sibling, C., who was born in January 2017. We disagree.

The trial court appropriately considered the safety of Child as weightier than any affection the young child might feel for Mother or vice versa. A parent's love of his child, alone, does not preclude a termination. **See In re L.M.**, 923 A.2d 505, 512 (Pa. Super. 2007). Nor will we "toll the well-being and permanency of [a child] indefinitely[,]" **In re Adoption of C.L.G.**, 956 A.2d at 1007 (citation omitted), while a parent tries to get her act together.

We find no merit to Mother's argument concerning the separation of the siblings. Child's sibling, C., was born seven months prior to the termination of Mother's parental rights. C. was also dependent, had not been reunified with Mother, and had not lived with Child. The trial court properly weighed the argument that Mother's counsel made at the hearing concerning the separation of the siblings in this case. The trial court appropriately concluded that the separation of the siblings in this matter served Child's best interests, for the reasons expressed by the trial court concerning Child's safety, as set forth above. Thus, we reject Mother's contention that the trial court abused its discretion in separating Child from his sibling.

After a careful review of the record, we find ample competent evidence to support the trial court's findings and credibility determinations. We, therefore, find no abuse of the trial court's discretion in terminating Mother's parental rights to Child under subsection (b).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/6/2018